UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

BRYAN MACANCELA, CRISTIAN ASITIMBAY,
MARIO ASITIMBAY, EDISON MACANCELA,          :
MILTON QUIZHPILEMA, EDUARDO YUNGA,
VLADIMIR YUNGA, FELIPE VEGA-LOYOLA,          :
VICTOR GONZALEZ, JUAN AGAPITO CARRANZA,
ROGELIO DE JESUS SANTOS, DIEGO A. ESTRADA    :     **COLLECTIVE AND**
CORTEZ, and JOSE VAZQUEZ REYES, individually       **CLASS ACTION**
and on behalf of all others similarly situated,      :     **COMPLAINT**

                                Plaintiffs,          :     Plaintiffs Demand a Jury

      -vs-          :

BESIM KUKAJ d/b/a BKUK GROUP and BKUK NYC    :
Restaurant Group, BKUK CORPORATION d/b/a Cara
Mia, BKUK 1 CORP. d/b/a Pecorino Pizzeria, BKUK 3    :
CORP. d/b/a La Carbonara, BKUK 5 CORP., BKUK 6
CORP. d/b/a Gallo Nero, BKUK 7 CORP. d/b/a Gallo    :
Nero II and El Gallo de Oro, BKUK 8 CORP. d/b/a
Serenata Mexican Restaurant, BKUK 9 CORP. d/b/a    :
Lime Jungle Empanadas, BKUK 10 CORP. d/b/a Cara
Mia and Cara Mia 2, ZUCCA TRATTORIA INC. d/b/a    :
Taqueria Mez-A and Gallo Nero, PIO RESTAURANT
LLC d/b/a Luna Piena, 9TH AVENUE LIME JUNGLE    :
INC. d/b/a Limon Jungle, B & R SORRENTO CORP.
d/b/a Intermezzo, 319 WEST 51ST ST. RESTAURANT    :
CORP. a/k/a 319 W 51st St Inc. d/b/a Maria Pia Restaurant,
and GALLO NERO W 44TH INC. d/b/a Gallo Nero,    :

                            Defendants.          :

------------------------------------------------------------------------X

      Plaintiffs BRYAN MACANCELA, CRISTIAN ASITIMBAY, MARIO ASITIMBAY,

EDISON MACANCELA, MILTON QUIZHPILEMA, EDUARDO YUNGA, VLADIMIR

YUNGA, FELIPE VEGA-LOYOLA, VICTOR GONZALEZ, JUAN AGAPITO CARRANZA,

ROGELIO DE JESUS SANTOS, DIEGO A. ESTRADA CORTEZ, and JOSE VAZQUEZ

REYES, by their undersigned attorneys, on behalf of themselves and all others similarly situated, as and for their complaint against the defendants, allege as follows:

1.      This is an action for damages for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.* and the New York Labor Law, N.Y. Lab. L. §§ 190, *et seq.*, and for conversion, unjust enrichment, and a constructive trust under New York common law. The FLSA claims are brought as a collective action, pursuant to 29 U.S.C. § 216(b), and the state law claims are brought as a class action, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the named plaintiffs and all other non-exempt employees who worked for the defendants at restaurants in Manhattan owned, controlled, operated and managed by defendant Besim Kukaj d/b/a BKUK Group and BKUK NYC Restaurant Group.

2.      Defendant Besim Kukaj is a restauranteur with a history of underpaying workers at more than a dozen restaurants he owns, controls, operates and manages in Manhattan.  He has coerced large numbers of low-wage workers – including many who speak little or no English – to continue working for him for less than legal wages by retaining the workers' first two paychecks as "security" and by firing anyone who insists on being paid what the law requires.

3.      Mr. Kukaj and his companies have stolen paychecks, wages and tips from at least 100 restaurant workers in every way imaginable, including by never giving them the paychecks that were withheld as "security," failing to pay for all hours worked, failing to pay minimum wages, failing to pay overtime rates after 40 hours per workweek, failing to pay spread of hours compensation after 10 hours worked in a single day, failing to provide required wage notices, and repeatedly giving workers paychecks that could not be cashed due to insufficient funds.

4.      Upon information and belief, Mr. Kukaj used the converted paychecks, wages and tips to purchase equipment and furnishings for his restaurants and real estate for himself and his

family in New York and New Jersey.  Plaintiffs therefore seek not only damages but also a constructive trust on the paychecks, wages, and tips that have been withheld, as well as the equipment, furnishings and real estate purchased with that withheld compensation.

## Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 216(b) (FLSA).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claims.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because the events and omissions giving rise to plaintiffs' claims occurred in this District.

## The Parties

7.    Plaintiff BRYAN MACANCELA was employed by Mr. Kukaj as a waiter and server at the Gallo Nero and Luna Piena restaurants.  He was paid with checks drawn on the accounts of various corporate entities, including defendants Gallo Nero W 44th Inc., Gallo Nero, 319 West 51st Street Restaurant Inc., Pio Restaurant LLC, BKUK 3 Corp., and BKUK 6 Corp., regardless of where he actually worked.  He was also paid with a check drawn on the account of an individual named Joseph Bellavia.  He worked for the defendants for more than five years.

8.    Plaintiff CRISTIAN ASITIMBAY was employed by Mr. Kukaj as a waiter and server at the Gallo Nero and Luna Piena restaurants.  He was paid with checks drawn on the accounts of various corporate entities, including defendant BKUK 6 Corp., regardless of where he actually worked.  He worked for the defendants for more than seven years.

9.    Plaintiff MARIO ASITIMBAY was employed by Mr. Kukaj as a waiter and server at the Gallo Nero and Intermezzo restaurants.  He was paid with checks drawn on the

accounts of various corporate entities, including defendant BKUK 6 Corp., regardless of where he actually worked. He worked for the defendants for more than eight years.

10.     Plaintiff EDISON MACANCELA was employed by Mr. Kukaj as a waiter and server at the Gallo Nero, Gallo Nero II and Cara Mia restaurants. He was paid with checks drawn on the accounts of various corporate entities, including defendants BKUK 6 Corp., 319 West 51st Street Restaurant Inc. and Gallo Nero W 44th Inc., regardless of where he actually worked. He worked for the defendants for more than eight years.

11.     Plaintiff MILTON QUIZHPILEMA was employed by Mr. Kukaj as a line cook at the Gallo Nero restaurant. He was paid with checks drawn on the account of defendant BKUK 6 Corp. Mr. Kukaj also paid him in cash. He worked for the defendants for approximately nine months.

12.     Plaintiff EDUARDO YUNGA was employed by Mr. Kukaj as a waiter and server at the Gallo Nero and Cara Mia restaurants. He was paid with checks drawn on the accounts of various corporate entities, including defendants BKUK 6 Corp. and Gallo Nero W 44th Inc., regardless of where he actually worked. He worked for the defendants for more than five years.

13.     Plaintiff VLADIMIR YUNGA was employed by Mr. Kukaj as a waiter and server at the Gallo Nero and Cara Mia restaurants. He was paid with checks drawn on the accounts of various corporate entities, including defendants Gallo Nero W 44th Inc. and BKUK 6 Corp., regardless of where he actually worked. He worked for the defendants for more than five years.

14.     Plaintiff FELIPE VEGA-LOYOLA was employed by Mr. Kukaj as a line cook at the Cara Mia and Cara Mia 2 restaurants. He was paid with checks drawn on accounts of various corporate entities, including defendants BKUK Corporation, BKUK 10 Corp., and 319 West 51st St. Restaurant Inc. d/b/a Maria Pia, as well as the personal checking account of defendant Besim

Kukaj, regardless of where he actually worked.  He worked for the defendants for more than two years.

15.     Plaintiff VICTOR GONZALEZ was employed by Mr. Kukaj as a waiter and server at the Cara Mia 2 restaurant.  He was paid with checks drawn on accounts of various corporate entities, including defendants BKUK 10 Corp. and 319 W 51st St. Inc., as well as the personal checking account of defendant Besim Kukaj, regardless of where he actually worked. He worked for the defendants for more than two years.

16.     Plaintiff JUAN AGAPITO CARRANZA was employed by Mr. Kukaj as a dishwasher, pizza cook, and salad preparer at the Cara Mia 2 restaurant.  He was paid with checks drawn on accounts of various corporate entities, including defendant BKUK 10 Corp., regardless of where he actually worked.  He worked for the defendants for more than one year.

17.     Plaintiff ROGELIO DE JESUS SANTOS was employed by Mr. Kukaj as a line cook at the Cara Mia 2, Maria Pia and La Carbonera restaurants.  He was paid with checks drawn on accounts of various corporate entities, including defendant BKUK 10 Corp., regardless of where he actually worked.  He worked for the defendants for more than one year.

18.     Plaintiff DIEGO A. ESTRADA CORTEZ was employed by Mr. Kukaj as a line cook at the Cara Mia 2 restaurant and Pecorino Pizzeria.  He was paid with checks drawn on accounts of various corporate entities, including defendants BKUK 10 Corp., BKUK 10 Corp. d/b/a Cara Mia and 319 W 51st St Inc. d/b/a Maria Pia, regardless of where he actually worked. He worked for the defendants for more than two years.

19.     Plaintiff JOSE VAZQUEZ REYES was employed by Mr. Kukaj as a food preparer and dishwasher at the Cara Mia 2 restaurant.  He was paid with checks drawn on accounts of various corporate entities, including defendants 319 W 51st St. Inc. d/b/a Maria Pia,

BKUK 5 Corp. and BKUK 10 Corp., as well as the personal checking account of defendant Besim Kukaj, regardless of where he actually worked. He worked for the defendants for more than two years.

20. Defendant BESIM KUKAJ owns, controls and operates more than a dozen restaurants in Manhattan under the names BKUK Group and BKUK NYC Restaurant Group, including Gallo Nero, Gallo Nero II, Cara Mia, Cara Mia 2, Taqueria Mez-A, Luna Piena, El Gallo de Oro, Limon Jungle, La Carbonara, Intermezzo, Maria Pia, Serenata, and Lime Jungle Empanadas. Mr. Kukaj was plaintiffs' employer and made all compensation and personnel decisions affecting plaintiffs and all other employees at his restaurants. He personally benefitted, financially and otherwise, from the conduct described in this complaint. Upon information and belief, Mr. Kukaj resides and is domiciled in the State of New Jersey.

21. Defendant BKUK CORPORATION ("BKUK Corp.") is a corporation organized under the laws of the State of New York with a principal place of business at 202 Eighth Avenue New York, New York 10011. BKUK Corp. does business under the name Cara Mia. Upon information and belief, Mr. Kukaj owns and controls BKUK Corp.

22. Defendant BKUK 1 CORP. ("BKUK 1") is a corporation organized under the laws of the State of New York with a principal place of business at 803 Ninth Avenue, New York, NY 10019. BKUK 1 does business under the name Pecorino Pizzeria. Upon information and belief, Mr. Kukaj owns and controls BKUK 1 Corp.

23. Defendant BKUK 3 CORP. ("BKUK 1") is a corporation organized under the laws of the State of New York with a principal place of business at 202 West 14th Street, New York, NY 10013. BKUK 3 does business under the name La Carbonara. Upon information and belief, Mr. Kukaj owns and controls BKUK 3 Corp.

6

24.    Defendant BKUK 5 CORP. ("BKUK 5") is a corporation organized under the laws of the State of New York with a principal place of business at 57 7th Avenue New York, NY 10014.  Upon information and belief, Mr. Kukaj owns and controls BKUK 5 Corp.

25.    Defendant BKUK 6 CORP. ("BKUK 6") is a corporation organized under the laws of the State of New York with a principal place of business at 803 Ninth Avenue, New York, NY 10019.  BKUK 6 does business under the name Gallo Nero.  Upon information and belief, Mr. Kukaj owns and controls BKUK 6 Corp.

26.    Defendant BKUK 7 CORP. ("BKUK 7") is a corporation organized under the laws of the State of New York with a principal place of business at 803 Ninth Avenue, New York, NY 10019.  BKUK 7 does business under the names Gallo Nero, Gallo Nero II, and El Gallo de Oro.  Upon information and belief, Mr. Kukaj owns and controls BKUK 7 Corp.

27.    Defendant BKUK 8 CORP. ("BKUK 8") is a corporation organized under the laws of the State of New York with a principal place of business at 803 Ninth Avenue, New York, NY 10019.  BKUK 8 does business under the names Serenata Restaurant and Serenata Mexican Restaurant.  Upon information and belief, Mr. Kukaj owns and controls BKUK 8 Corp.

28.    Defendant BKUK 9 CORP. ("BKUK 9") is a corporation organized under the laws of the State of New York with a principal place of business at 803 Ninth Avenue, New York, NY 10019.  BKUK 9 does business under the name Lime Jungle Empanadas.  Upon information and belief, Mr. Kukaj owns and controls BKUK 9 Corp.

29.    Defendant BKUK 10 CORP. ("BKUK 10") is a corporation organized under the laws of the State of New York with a principal place of business at 623 Ninth Avenue, New York, NY 10036.  BKUK 10 does business under the names Cara Mia and Cara Mia 2.  Upon information and belief, Mr. Kukaj owns and controls BKUK 10 Corp.

30.     Defendant ZUCCA TRATTORIA INC. ("Zucca Trattoria") is a corporation organized under the laws of the State of New York with a principal place of business at 95 Seventh Avenue South, New York, New York 10014. Zucca Trattoria does business under the names Taqueria Mez-A and Gallo Nero. Upon information and belief, Mr. Kukaj owns and controls Zucca Trattoria.

31.     Defendant PIO RESTAURANT LLC ("Pio Restaurant") is a corporation organized under the laws of the State of New York with a principal place of business at 243 East 53rd Street, New York, New York 10022. Pio Restaurant does business under the name Luna Piena. Upon information and belief, Mr. Kukaj owns and controls Pio Restaurant.

32.     Defendant 9TH AVENUE LIME JUNGLE INC. ("9th Avenue") is a corporation organized under the laws of the State of New York with a principal place of business at 803 Ninth Avenue, New York, New York 10019. 9th Avenue does business under the name Limon Jungle. Upon information and belief, Mr. Kukaj owns and controls 9th Avenue.

33.     Defendant B & R SORRENTO CORP. ("B & R") is a corporation organized under the laws of the State of New York with a principal place of business at 202 Eighth Avenue, New York, New York 10011. B & R does business under the name Intermezzo. Upon information and belief, Mr. Kukaj owns and controls B & R.

34.     Defendant 319 WEST 51ST ST. RESTAURANT CORP. ("319 West") is a corporation organized under the laws of the State of New York with a principal place of business at 319 West 51st Street, New York, New York 10019. 319 West does business under the names 319 W 51st St Inc. and Maria Pia Restaurant. Upon information and belief, Mr. Kukaj owns and controls 319 West.

35.    Defendant GALLO NERO W 44TH INC. ("Gallo Nero Inc.") is a corporation organized under the laws of the State of New York with a principal place of business at 143 East 37th Street, New York, New York 10016.  Gallo Nero Inc. does business under the name Gallo Nero.  Upon information and belief, Mr. Kukaj owns and controls Gallo Nero Inc.

### Facts Relevant to All Claims

36.    Defendant Besim Kukaj runs a restaurant empire through unincorporated "groups" of companies that he calls the BKUK Group and the BKUK NYC Restaurant Group without regard to corporate formalities or wage and hours laws.  He uses employment forms and holds himself out to employees as BKUK Group and BKUK NYC Restaurant Group.  He transfers workers from one restaurant to another based on his personal needs.  He changes the names of restaurants and the corporate entities associated with them at his whim.  He pays workers with checks from different corporate entities regardless of where they actually worked and sometimes pays workers with checks drawn on his personal bank account.  There is, in fact, no distinction between Besim Kukaj, the corporations he has formed, and the restaurants he owns, controls, operates and manages.  Every action affecting workers at Besim Kukaj's restaurants is directed by Mr. Kukaj personally for his own benefit.

### A. Defendants' Failure to Pay the Required Overtime Wages

37.    Mr. Kukaj and the corporate defendants failed to pay plaintiffs and other employees one and one-half times the regular wage rate for all hours worked in excess of 40 per week.

38.    Plaintiff Bryan Macancela regularly worked more than 40 hours during a workweek.  He worked more than 54 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek,

including without limitation during the workweeks ending on April 30, 2018; January 15, 2018;

December 18, 2017; June 19, 2017; December 12, 2016; November 30, 2015; October 20, 2014;

August 26, 2013; and August 13, 2012.

39.    Plaintiff Cristian Asitimbay regularly worked more than 40 hours during a

workweek.  He worked more than 48 hours during most workweeks.  He was not paid one and

one-half times his regular wage rate when he worked more than 40 hours in a workweek,

including without limitation during the workweeks ending on February 5, 2018; January 29,

2018; January 22, 2018; December 18, 2017; October 23 2017; June 19, 2017; December 5,

2016; November 30, 2015; October 20, 2014; August 26, 2013; and August 13, 2012.

40.    Plaintiff Mario Asitimbay regularly worked more than 40 hours during a

workweek.  He worked more than 42 hours during most workweeks.  He was not paid one and

one-half times his regular wage rate when he worked more than 40 hours in a workweek,

including without limitation during the workweeks ending on April 23, 2018; January 29, 2018;

January 22, 2018; December 18, 2017; October 23 2017; June 19, 2017; and December 5, 2016.

41.    Plaintiff Edison Macancela frequently worked more than 40 hours during a

workweek.  He was not paid one and one-half times his regular wage rate when he worked more

than 40 hours in a workweek, including without limitation during the workweeks ending on

February 5, 2018; January 29, 2018; January 22, 2018; December 18, 2017; October 23 2017;

June 19, 2017; December 5, 2016; November 30, 2015; October 20, 2014; August 26, 2013; and

August 13, 2012.

42.    Plaintiff Milton Quizhpilema regularly worked more than 40 hours during a

workweek.  He worked more than 45 hours during most workweeks.  He was not paid one and

one-half times his regular wage rate when he worked more than 40 hours in a workweek,

including without limitation during the workweeks ending on February 5, 2018; January 29, 2018; and January 22, 2018.

43.    Plaintiff Eduardo Yunga regularly worked more than 40 hours during a workweek.  He worked more than 46 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek, including without limitation during the workweeks ending on March 5, 2018; October 16 2017; July 31, 2017; December 12, 2016; November 9, 2015; October 20, 2014; August 26, 2013; and August 6, 2012.

44.    Plaintiff Vladimir Yunga regularly worked more than 40 hours during a workweek.  He worked more than 49 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek, including without limitation during the workweeks ending on February 5, 2018; January 29, 2018; January 22, 2018; December 18, 2017; October 23 2017; June 19, 2017; December 5, 2016; November 30, 2015; October 20, 2014; August 26, 2013; and August 13, 2012.

45.    Plaintiff Felipe Vega-Loyola regularly worked more than 40 hours during a workweek.  He worked more than 72 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek, including without limitation the workweeks with the pay dates of April 28, 2018; January 28, 2018; October 22, 2017; August 13, 2017; and March 12, 2017.

46.    Plaintiff Victor Gonzalez regularly worked more than 40 hours during a workweek.  He worked more than 67 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek,

including without limitation the workweeks with the pay dates of May 15, 2018; January 28, 2018; October 22, 2017; August 13, 2017; and June 21, 2017.

47.    Plaintiff Juan Agapito Carranza regularly worked more than 40 hours during a workweek.  He worked more than 72 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek, including without limitation the workweeks with the pay dates of February 28, 2018 and October 24, 2017.

48.    Plaintiff Rogelio de Jesus Santos regularly worked more than 40 hours during a workweek.  He worked more than 49 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek, including without limitation the workweeks with the pay dates of May 21, 2018, February 18, 2018, and October 16, 2017.

49.    Plaintiff Diego A. Estrada Cortez regularly worked more than 40 hours during a workweek.  He worked more than 49 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek, including without limitation the workweeks with the pay dates of April 23, 2018, February 18, 2018, December 10, 2017, and October 6, 2017.

50.    Plaintiff Jose Vazquez Reyes regularly worked more than 40 hours during a workweek.  He worked more than 54 hours during most workweeks.  He was not paid one and one-half times his regular wage rate when he worked more than 40 hours in a workweek, including without limitation the workweeks with the pay dates of May 6, 2018, February 25, 2018, December 17, 2017, and October 15, 2017.

B. **Defendants' Conversion of Plaintiffs' Wages and Failure to Pay Wages When Due**

51.    Defendant Besim Kukaj and the corporate defendants implemented a policy and practice of withholding employee paychecks for the first two weeks as "security" to ensure that they would continue working for the defendants without complaining.

52.    Defendant Besim Kukaj and the corporate defendants also paid plaintiffs with checks drawn on accounts that the defendants knew or should have known had insufficient funds.  As a result, defendants repeatedly delayed paying plaintiffs the wages they were owed and caused plaintiffs to incur bank fees for returned checks.

53.    Defendants withheld plaintiff Bryan Macancela's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

54.    Defendants frequently paid plaintiff Bryan Macancela with checks that were returned for insufficient funds, including without limitation on April 17, 2014, July 11, 2014, May 18, 2018, and June 13, 2018.  As a result, Mr. Macancela incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

55.    Defendants withheld plaintiff Cristian Asitimbay's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

56.    Defendants frequently paid plaintiff Cristian Asitimbay with checks that were returned for insufficient funds, including without limitation on May 20, 2018, May 30, 2018, June 1, 2018, June 21, 2018, and June 22, 2018.  As a result, Mr. Asitimbay incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

57.    Defendants withheld plaintiff Mario Asitimbay's paychecks for the first two weeks that he was employed by the defendants. Defendants never paid him for those first two weeks of work.

58.    Defendants frequently paid plaintiff Mario Asitimbay with checks that were returned for insufficient funds, including without limitation on March 26, 2016, July 12, 2016, August 3, 2016, May 24, 2017, June 30, 2017, August 31, 2017, October 6, 2017, January 10, 2018, March 29, 2018, April 27, 2018, May 10, 2018, May 21, 2018, and June 14, 2018. As a result, Mr. Asitimbay incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

59.    Defendants withheld plaintiff Edison Macancela's paychecks for the first two weeks that he was employed by the defendants. Defendants never paid him for those first two weeks of work.

60.    Defendants frequently paid plaintiff Edison Macancela with checks that were returned for insufficient funds, including without limitation on August 10, 2016, September 26, 2017, February 20, 2018, and June 13, 2018. As a result, Mr. Macancela incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

61.    Defendants withheld plaintiff Milton Quizhpilema's paychecks for the first two weeks that he was employed by the defendants. Defendants never paid him for those first two weeks of work.

62.    Defendants frequently paid plaintiff Milton Quizhpilema with checks that were returned for insufficient funds. As a result, Mr. Quizhpilema incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

63.     Defendants withheld plaintiff Eduardo Yunga's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

64.     Defendants frequently paid plaintiff Eduardo Yunga with checks that were returned for insufficient funds.  As a result, Mr. Yunga incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

65.     Defendants withheld plaintiff Vladimir Yunga's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

66.     Defendants frequently paid plaintiff Vladimir Yunga with checks that were returned for insufficient funds.  As a result, Mr. Yunga incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

67.     Defendants withheld plaintiff Felipe Vega-Loyola's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

68.     Defendants frequently paid plaintiff Felipe Vega-Loyola with checks that were returned for insufficient finds, including without limitation on April 20, 2018, April 6, 2018, March 30, 2018, February 15, 2018, February 9, 2018, January 17, 2018, January 1, 2018, and September 8, 2017.  As a result, Mr. Vega-Loyola incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

69.     Defendants withheld plaintiff Victor Gonzalez's paychecks for the first four weeks that he was employed by the defendants.  Defendants never paid him for those first four weeks of work.

70.     Defendants frequently paid plaintiff Victor Gonzalez with checks that were returned for insufficient finds, including without limitation on May 15, 2018, April 23, 2018, January 16, 2018, and January 14, 2018.  As a result, Mr. Gonzalez incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

71.     Defendants withheld plaintiff Juan Agapito Carranza's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

72.     Defendants frequently paid plaintiff Juan Agapito Carranza with checks that were returned for insufficient finds, including without limitation on February 28, 2018, February 15, 2018, February 9, 2018, and October 11, 2017.  As a result, Mr. Carranza incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

73.     Defendants withheld plaintiff Rogelio de Jesus Santos's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

74.     Defendants frequently paid plaintiff Rogelio de Jesus Santos with checks that were returned for insufficient funds, including without limitation on October 16, 2017.  As a result, Mr. Santos incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

75.     Defendants withheld plaintiff Diego A. Estrada Cortez's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

76.     Defendants frequently paid plaintiff Diego A. Estrada Cortez with checks that were returned for insufficient funds, including without limitation on March 5, 2018, February 15,

2018, and November 1, 2017.  As a result, Mr. Estrada incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

77.     Defendants withheld plaintiff Jose Vazquez Reyes's paychecks for the first two weeks that he was employed by the defendants.  Defendants never paid him for those first two weeks of work.

78.     Defendants frequently paid plaintiff Jose Vazquez Reyes with checks that were returned for insufficient funds, including without limitation on January 3, 2018.  As a result, Mr. Vazquez incurred bank fees and had to wait until several weeks after the regular pay day to be paid.

**C. Defendants' Failure to Pay for All Hours Worked
   and Failure to Pay the Required Minimum Wage Rates**

79.     Defendants failed to pay plaintiffs and other class members for all hours worked.

80.     Defendants failed to pay plaintiffs and other class members the applicable minimum wage required by federal and state laws.

81.     Defendants failed to plaintiff Bryan Macancela for all the hours he worked.  They also paid him less than the applicable federal or state minimum wage.

82.      Defendants failed to pay plaintiff Cristian Asitimbay for all the hours he worked. They also paid him less than the applicable federal or state minimum wage.

83.     Defendants failed to pay plaintiff Mario Asitimbay for all the hours he worked. They also paid him less than the applicable federal or state minimum wage.

84.      Defendants failed to pay plaintiff Edison Macancela for all the hours he worked. They also paid him less than the applicable federal or state minimum wage.

85.     Defendants failed to pay plaintiff Eduardo Yunga for all the hours he worked. They also paid him less than the applicable federal or state minimum wage.

86.    Defendants failed to pay plaintiff Vladimir Yunga for all the hours he worked. They also paid him less than the applicable federal or state minimum wage.

87.    Defendants failed to pay plaintiff Victor Gonzalez for all the hours he worked. They also paid him less than the applicable federal or state minimum wage.

88.    Defendants failed to pay plaintiff Juan Agapito Carranza for all the hours he worked.  They also paid him less than the applicable federal or state minimum wage.

89.    Defendants failed to pay plaintiff Rogelio de Jesus Santos for all the hours he worked.  They also paid him less than the applicable federal or state minimum wage.

90.    Defendants failed to pay plaintiff Diego Estrada Cortez for all the hours he worked.  They also paid him less than the applicable federal or state minimum wage.

91.    Defendants failed to pay plaintiff Jose Vazquez Reyes for all the hours he worked. They also paid him less than the applicable federal or state minimum wage.

92.    Defendants were not permitted to take a "tip credit" or pay plaintiffs and other employees the lower federal minimum wage for "tipped" employees because they failed to provide employees with proper notices required by the Fair Labor Standards Act.

93.    Defendants were not permitted to take a "tip credit" or pay plaintiffs and other employees the lower New York State minimum wage for "tipped" employees because they failed to provide employees with proper written notices required by the New York Labor Law.

94.    Defendants were not permitted to take a "tip credit" or pay plaintiffs and other employees the lower federal or state minimum wage for "tipped" employees because they required plaintiffs and other employees to perform work and services for which customers did not and were not expected to pay tips.

95.     Defendants were not permitted to take a "tip credit" or pay plaintiffs and other employees the lower federal or state minimum wage for "tipped" employees because they required plaintiffs and other employees to share tips with managers and other workers who did not serve customers or customarily receive tips.

**D.  Defendants' Failure to Pay for a Spread of Hours**

96.     Mr. Kukaj and the corporate defendants did not pay for a spread of hours when employees worked more than 10 hours in a single day.

97.     Plaintiff Bryan Macancela often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

98.     Plaintiff Cristian Asitimbay often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

99.     Plaintiff Mario Asitimbay often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

100.    Plaintiff Edison Macancela often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

101.    Plaintiff Milton Quizhpilema often worked more than 10 hours in a single day. He was not paid for a spread of hours on days when he worked more than 10 hours.

102.    Plaintiff Eduardo Yunga often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

103.    Plaintiff Vladimir Yunga often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

104.    Plaintiff Felipe Vega-Loyola often worked more than 10 hours in a single day. He was not paid for a spread of hours on days when he worked more than 10 hours.

105.    Plaintiff Victor Gonzalez often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

106.    Plaintiff Juan Agapito Carranza often worked more than 10 hours in a single day. He was not paid for a spread of hours on days when he worked more than 10 hours.

107.    Plaintiff Rogelio de Jesus Santos often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

108.    Plaintiff Diego A. Estrada Cortez often worked more than 10 hours in a single day.  He was not paid for a spread of hours on days when he worked more than 10 hours.

109.    Plaintiff Jose Vazquez Reyes often worked more than 10 hours in a single day. He was not paid for a spread of hours on days when he worked more than 10 hours.

### E.  Defendants' Practice of Retaliating Against Employees Who Complain

110.    Plaintiff Bryan Macancela participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Macancela's complaint, defendants withheld his cash tips and required him to share his remaining tips with a manager, host and other employees who did not provide service to customers or customarily receive tips.  Defendants' actions constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

111.    Plaintiff Cristian Asitimbay participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Asitimbay's complaint, defendants withheld his cash tips and required him to share his remaining tips with a manager, host and other employees who did not provide service to customers or customarily receive tips.  Defendants' actions constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

112.    Plaintiff Mario Asitimbay participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Asitimbay's complaint, defendants withheld his cash tips and required him to share his remaining tips with a manager, host and other employees who did not provide service to customers or customarily receive tips.  Defendants' actions constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

113.    Plaintiff Edison Macancela participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Macancela's complaint, defendants withheld his cash tips and required him to share his remaining tips with a manager, host and other employees who did not provide service to customers or customarily receive tips.  Defendants' actions constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

114.    Plaintiff Eduardo Yunga participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Yunga's complaint, defendants withheld his cash tips and required him to share his remaining tips with a manager, host and other employees who did not provide service to customers or customarily receive tips.  Defendants' actions constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

115.    Plaintiff Vladimir Yunga participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Yunga's complaint, defendants withheld his cash tips and required him to share his remaining tips with a manager, host and other employees who did not provide service to customers or

customarily receive tips.  Defendants' actions constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

116.    Plaintiff Felipe Vega-Loyola participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Vega-Loyola's complaint, defendants failed to pay him any wages.  Defendants' failure to pay wages owed to Mr. Vega-Loyola constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

117.    Plaintiff Victor Gonzalez participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Gonzalez's complaint, defendants failed to pay him any wages.  Defendants' failure to pay wages owed to Mr. Gonzalez constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

118.    Plaintiff Juan Agapito Carranza participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Carranza's complaint, defendants failed to pay him any wages.  Defendants' failure to pay wages owed to Mr. Carranza constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

119.    Plaintiff Rogelio de Jesus Santos participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Santos's complaint, defendants failed to pay him any wages.  Defendants' failure to pay wages owed to Mr. Santos constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

120.    Plaintiff Diego A. Estrada Cortez participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Estrada's complaint, defendants failed to pay him any wages.  Defendants' failure to pay wages owed to Mr. Estrada constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

121.    Plaintiff Jose Vazquez Reyes participated in meetings where employees objected to defendant Besim Kukaj and his companies paying less than legal wages.  After receiving Mr. Vazquez's complaint, defendants failed to pay him any wages.  Defendants' failure to pay wages owed to Mr. Vazquez constituted a constructive discharge in retaliation for his complaints that he was being paid less than legal wages.

**F.  Defendants Intentionally Violated the Wage and Hours Laws**

122.    Mr. Kukaj and the corporate defendants acted intentionally to deprive plaintiffs and other employees of their rightful wages when Mr. Kukaj designed and implemented the above-described policies and practices.

123.    Mr. Kukaj and the corporate defendants were aware of their legal obligations under the Fair Labor Standards Act and the New York Labor Law.

124.    On March 24, 2014, employees at a restaurant owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and one of his corporate entities for violations of the minimum wage, overtime, spread of hours, and notice requirements of the FLSA and New York Labor Law.

125.    On January 28, 2015, a bartender employed at two restaurants owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and two of his corporate entities

for violations of the minimum wage, overtime, spread of hours, and notice requirements of the FLSA and New York Labor Law.

126.    On January 10, 2017, bussers and food deliverymen at two restaurants owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and two of his corporate entities for violations of the minimum wage, overtime, and spread of hours requirements of the FLSA and New York Labor Law.

127.    On June 20, 2017, a kitchen employee at a restaurant owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and one of his corporate entities for violations of the minimum wage, overtime, and spread of hours requirements of the FLSA and New York Labor Law.

128.    On August 15, 2017, three waiters and servers who worked at five restaurants owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and four of his corporate entities for violations of the minimum wage, overtime, and spread of hours requirements of the FLSA and New York Labor Law, and for failure to provide the required wage notices.

129.    On February 19, 2018, a food runner who worked at a restaurant owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and two of his corporate entities for violations of the minimum wage, overtime, and spread of hours requirements of the FLSA and New York Labor Law, and for failure to provide the required wage notices.

130.    On April 26, 2018, six employees who worked as food runners, cooks, and bussers at a restaurant owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and one of his corporate entities for violations of the minimum wage, overtime, and

spread of hours requirements of the FLSA and New York Labor Law, and for failure to provide the required wage notices.

131.    On May 4, 2018, five employees who worked as servers, bartenders, food runners, bussers, and kitchen workers at a restaurant owned, controlled, operated and managed by Mr. Kukaj filed a lawsuit against him and one of his corporate entities for violations of the minimum wage, overtime, and spread of hours requirements of the FLSA and New York Labor Law, and for failure to provide the required wage notices.

132.    These prior lawsuits gave Mr. Kukaj and the corporate defendants actual notice of their legal obligations under the FLSA and New York Labor law.

133.    Despite having actual notice of their legal obligations under the FLSA and New York Labor Law, Mr. Kukaj and the corporate defendants intentionally violated the law by failing to provide the required notices and failing to pay plaintiffs and other employees the minimum wage, overtime, and spread of hours compensation they were entitled to be paid under the FLSA and New York Labor Law.

**G.  Collective and Class Action Allegations**

134.    The defendants' conduct described above was part of and resulted from policies and practices that they applied to all non-exempt employees who worked for restaurants owned, controlled, operated and/or managed by defendant Besim Kukaj.

135.    Plaintiffs therefore bring their federal claims as an opt-in collective action pursuant to 29 U.S.C. § 216(b) (the "FLSA Opt-In Class"), and their state law claims as an opt-out class action (the "NYS Law Opt-Out Class") pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

25

136.     The FLSA Opt-In Class is comprised of all non-exempt employees who worked for the defendants at the Gallo Nero, Gallo Nero II, Cara Mia, Cara Mia 2, Taqueria Mez-A, Luna Piena, El Gallo de Oro, Limon Jungle, La Carbonara, Intermezzo, Maria Pia, Serenata, or Lime Jungle Empanadas restaurants at any time since August 17, 2015.

137.     The NYS Law Opt-Out Class is comprised of all non-exempt employees who worked for the defendants at the Gallo Nero, Gallo Nero II, Cara Mia, Cara Mia 2, Taqueria Mez-A, Luna Piena, El Gallo de Oro, Limon Jungle, La Carbonara, Intermezzo, Maria Pia, Serenata, or Lime Jungle Empanadas restaurants at any time since August 17, 2012.

138.     The claims of the NYS Law Opt-Out Class are properly brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

a.     Numerosity:  The potential members of the NYS Law Opt-Out Class are so numerous that joinder of all members of the class is impracticable.

b.     Commonality:  There are questions of law and fact common to plaintiffs and the class that predominate over any questions affecting only individual members of the class.  These common questions of law and fact include:

i.     whether the defendants engaged in a policy and practice of failing to pay the minimum wage;

ii.     whether the defendants engaged in a policy and practice of failing to pay time and a half at the proper wage rate for all hours worked in excess of 40 during a workweek;

iii.     whether the defendants engaged in a policy and practice of failing to pay for a spread of hours on days when employees worked more than 10 hours;

    iv.    whether the defendants engaged in a policy and practice of failing to pay compensation for all hours worked;

    v.    whether the defendants engaged in a policy and practice of failing to provide proper wage and hours notices required by Section 195 of the New York Labor Law;

    vi.    whether the defendants operated their businesses as a single enterprise;

    vii.    whether the defendants are joint employers;

    viii.    whether the defendants acted intentionally;

    ix.    whether the defendants are liable to the class;

    x.    whether the class can be made whole by the payment of damages; and

    xi.    whether Mr. Kukaj is personally liable for the damages sustained by members of the class.

c.   Typicality:  Plaintiffs' claims are typical of the claims of the class.  Plaintiffs and all members of the class sustained injuries and damages arising out of and proximately caused by defendants' policies and practices of:  failing to pay the minimum wage; failing to pay time and a half at the proper wage rate for all hours worked in excess of 40 during a workweek; failing to pay for a spread of hours on days when employees worked more than 10 hours; failing to pay compensation for all hours worked; and failing to provide proper wage and hours notices required by Section 195 of the New York Labor Law.

d.   Adequacy of Representation:  Plaintiffs will fairly and adequately represent the interest of class members.  Plaintiffs' counsel is competent and experienced in litigating complex employment class actions.

e.   Superiority:  A class action is superior to other available means for fair and

efficient adjudication of this controversy.  Each class member has been damaged

and is entitled to recovery because of defendants' illegal policies and practices.

Individual joinder of all class members is not practicable.  It would be

prohibitively expensive and impractical for class members to sue individually.

Class action treatment will allow those similarly situated persons to litigate their

claims in the manner that is most efficient and economical for the parties and the

judicial system.

**FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS**
**OF THE FAIR LABOR STANDARDS ACT (FLSA)**

139.   Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through

137 above as if fully restated herein.

140.   The defendants have regulated the employment of plaintiffs and all other persons

employed by them, acted directly and indirectly in their own interest in relation to the

employees, and are thus employers of their employees within the meaning of section 3(d) of the

Fair Labor Standards Act ("FLSA").

141.   Defendant Besim Kukaj at all relevant times was in active control and

management of the corporate defendants, regulated the employment of plaintiffs and all other

persons employed by the corporate defendants, acted directly and indirectly in the interests of

himself and the corporate defendants in relation to the employees, and thus is an employer of the

defendants' employees within the meaning of section 3(d) of the FLSA.

28

142.    The business activities of the defendants, as described in this complaint, were related and performed through uniform operation or common control for a common business purpose and constitute an enterprise within the meaning of section 3(r) of the FLSA.

143.    Defendants have employed employees at their places of business in activities of an enterprise engaged in commerce.  The enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00.  Therefore plaintiffs and the other employees were at all relevant times employed in an enterprise engaged in commerce within the meaning of section 3(s)(1)(A) of the FLSA.

144.    Defendants willfully and repeatedly violated the provisions of sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215, by employing plaintiffs and class members in an enterprise engaged in commerce without paying them the proper minimum wage for all hours worked.

145.    Defendants willfully and repeatedly violated the provisions of sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215, by employing plaintiffs and class members in an enterprise engaged in commerce, for workweeks longer than those prescribed in section 7 of the FLSA, and without compensating them for their employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which they were employed.

146.    Defendants are liable for unpaid minimum wage and overtime compensation together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid minimum wage and overtime compensation together with prejudgment interest on said unpaid minimum wage and overtime compensation.

## SECOND CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS FOR VIOLATIONS
## OF THE FLSA PROMPT PAYMENT REQUIREMENT

147.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 145 above as if fully restated herein.

148.    Defendants failed to pay regular and overtime compensation earned in a particular workweek on the regular pay days for the periods in which such workweeks ended.

149.    Defendants delayed payment of regular and overtime compensation beyond the time reasonably necessary to compute and arrange for payment of the amount of regular and overtime compensation due.

150.    Defendants violated the FLSA's prompt payment requirement in 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.106.

151.    Defendants are liable for damages in an amount to be determined at trial, including liquidated damages.

## THIRD CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS FOR VIOLATIONS
## OF THE NEW YORK LABOR LAW

152.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 150 above as if fully restated herein

153.    Defendants' failure to pay plaintiffs and other class members the proper minimum wage for all hours worked violated New York Labor Law §§ 650, *et seq.*, and is actionable under New York Labor Law § 663(1).

154.    Defendants' failure to pay plaintiffs and other class members the proper overtime pay violated New York Labor Law § 650, *et seq.* and 12 N.Y.C.R.R. § 142-2.2.

155.    Defendants' failure to pay plaintiffs and other class members the proper spread of hours pay violated New York Labor Law § 650, *et seq.* and 12 N.Y.C.R.R. § 146-1.6.

156.    Defendants' failure to pay plaintiffs and other class members the proper minimum wage, overtime compensation, and spread of hours pay was intentional.

157.    Defendants are liable for unpaid minimum wages, overtime wages, and spread of hours compensation together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid minimum wage and overtime compensation together with prejudgment interest on said unpaid minimum wage and overtime compensation.

**FOURTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS**
**OF THE NEW YORK LABOR LAW**
**AND WAGE THEFT PREVENTION ACT**

158.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 156 above as if fully restated herein.

159.    Defendants did not provide plaintiffs and other class, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing:  the regular and overtime rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

160.    Defendants did not obtain from plaintiffs and other class members signed and dated written acknowledgements, in English and in the primary language of the employee, of receipt of the notice required by Section 195(1) of the New York Labor Law and affirmation by

the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee was in the language so identified.

161.    Defendants did not furnish to plaintiffs and other class members a statement with every payment of wages listing:  the dates of work covered by that payment of wages; the name of the employee; the name of employer; the address and phone number of the employer; the regular and overtime rate or rates of pay and basis thereof; the gross wages; the number of regular hours worked; the number of overtime hours worked; deductions;  allowances, if any, claimed as part of the minimum wage; and net wages.

162.    Defendants violated the New York State Wage Theft Prevention Act by failing to provide plaintiffs and other class members with the notices required by Section 195(1) of the New York Labor Law.

163.    Defendants violated the New York State Wage Theft Prevention Act by failing to provide plaintiffs and other class members with the wage statements required by Section 195(3) of the New York Labor Law.

164.    Plaintiffs and other class members are each entitled to recover from defendants statutory damages of $50.00 per day for each day that defendants violated the notice requirements of Section 195(1) of the New York Labor Law, up to a maximum of $5,000.00 for each plaintiff and class member.

165.    Plaintiffs and other class members are each entitled to recover from defendants statutory damages of $250.00 per day for each day that defendants violated the wage statements requirements of Section 195(3) of the New York Labor Law, up to a maximum of $5,000.00 for each plaintiff and class member.

32

**FIFTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR VIOLATIONS**
**OF THE NEW YORK LABOR LAW**

166.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 164 above as if fully restated herein.

167.    Defendants did not pay plaintiffs and other class members on a regular weekly basis in violation of Section 191 of the New York Labor Law.

168.    Defendants did not pay plaintiffs and other class members on the regular pay day in violation of Section 191 of the New York Labor Law.

169.    Defendants are liable to plaintiffs and other class members in amounts to be determined at trial, including liquidated damages.

**SIXTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR CONVERSION**

170.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 168 above as if fully restated herein.

171.     Plaintiffs and other class members had possessory rights or interests in their paychecks, wages and tips.

172.    Defendants exercised dominion over or interference with plaintiffs' rights and interests without the consent of plaintiffs and other class members.

173.    Defendants' are liable to plaintiffs and other class members for compensatory and punitive damages in amounts to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR**
**UNJUST ENRICHMENT AND *QUANTUM MERUIT***

174.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 172 above as if fully restated herein.

33

175.    Defendants have been enriched by the labor and services of plaintiffs and class members.

176.    Defendants have been enriched by their retention of paychecks, wages and tips of plaintiffs and class members.

177.    Defendants have been enriched by the use of paychecks, wages and tips of class members to purchase equipment, furnishings and real property in the States of New York and New Jersey.

178.    Defendants have been enriched at the expense of plaintiffs and class members.

179.    It is against equity and good conscience to permit defendants to retain the paychecks, wages and tips of plaintiffs and class members or the equipment, furnishings and real property purchased by those paychecks, wages and tips.

180.    Plaintiffs and class members are entitled to an award of damages based on *quantum meruit*.

### EIGHTH CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS
### FOR A CONSTRUCTIVE TRUST

181.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 179 above as if fully restated herein.

182.    Defendants assumed a fiduciary relationship with plaintiffs and class members when defendants took possession of the paychecks, wages and tips of plaintiffs and class members as "security."

183.    Defendants promised to hold those paychecks, wages and tips for the benefit of plaintiffs and class members.

184.    The paychecks, wages and tips of plaintiffs and class members were transferred to the defendants in reliance on the promise that they were being held for the benefit of plaintiffs and class members.

185.    Defendants wrongfully retained the paychecks, wages and tips of plaintiffs and class members.

186.    Upon information and belief, defendants used the paychecks, wages and tips of plaintiffs and class members to purchase restaurant equipment, furnishings and real property in the States of New York and New Jersey.

187.    Defendants have been unjustly enriched by reason of their retention and use of the paychecks, wages and tips of plaintiffs and class members.

188.    Plaintiffs and class members are entitled to a constructive trust on all paychecks, wages and tips retained by defendants and any equipment, furnishings and real property purchased by defendants with those paychecks, wages and tips.

### NINTH CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS FOR
### UNLAWFUL RETALIATION IN VIOLATION OF
### THE NEW YORK LABOR LAW

189.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 187 above as if fully restated herein.

190.    Each of the named plaintiffs participated in meetings where employees complained to defendant Besim Kukaj that they were not being paid the wages required by state law.

191.    Defendant Kukaj, acting for himself and the corporate defendants he owns and controls, constructively discharged each of the named plaintiffs' employment.

35

192.    Upon information and belief, defendants constructively discharged the named plaintiffs because they complained about defendants' failure to pay the wages required by state law.

193.    Defendants violated Section 215 of the New York Labor Law by retaliating against the named plaintiffs.

194.    Plaintiffs suffered damages proximately caused by the defendants' conduct.

## Jury Demand

195.    Plaintiffs are entitled to and demand a jury trial.

## Prayer for Relief

WHEREFORE plaintiffs BRYAN MACANCELA, CRISTIAN ASITIMBAY, MARIO ASITIMBAY, EDISON MACANCELA, MILTON QUIZHPILEMA, EDUARDO YUNGA, VLADIMIR YUNGA, FELIPE VEGA-LOYOLA, VICTOR GONZALEZ, JUAN AGAPITO CARRANZA, ROGELIO DE JESUS SANTOS, DIEGO A. ESTRADA CORTEZ, and JOSE VAZQUEZ REYES, on behalf of themselves and the FLSA Opt-In Class and the NYS Law Opt-Out Class they seek to represent, request judgment against each defendant, jointly and severally, awarding plaintiffs and all class members compensatory and punitive damages in amounts to be determined at trial, liquidated damages as authorized by 29 U.S.C. § 216(b) and New York Labor Law § 198, statutory damages as authorized by New York Labor Law § 198, pre- and post-judgment interest, a constructive trust on all unpaid compensation and all property purchased with such unpaid compensation, reasonable attorneys' fees and the costs of this action as authorized by 29 U.S.C. § 216(b) and New York Labor Law § 198, and such other and further

relief as this Court deems just and proper.

Dated: New York, New York
      August 17, 2018

THE HOWLEY LAW FIRM P.C.

By: _____
    John Howley [JH9764]
*Attorneys for Plaintiffs*
350 Fifth Avenue, 59th Floor
New York, New York  10118
(212) 601-2728